UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID VERKADE,

       Plaintiff,

v.

UNITED STATES POSTAL SERVICE
and POSTMASTER GENERAL JOHN E.
POTTER,

       Defendants.
_____/

Case No. 1:07-cv-531

HON. JANET T. NEFF

## OPINION

This matter was tried to the Court on December 9 through December 11, 2008. Remaining for trial were plaintiff's claims under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* The claims concern plaintiff's absences from work in December 2006 and June 2007. The Court has carefully reviewed the facts to which the parties stipulated before trial, the trial testimony, the 100 joint exhibits admitted at trial, and the proposed findings of fact and conclusions of law the parties submitted after trial. This Opinion contains the Court's findings of fact and conclusions of law in accordance with FED. R. CIV. P. 52(a). The Court determines that defendants are entitled to Judgment in their favor on both claims.

I

A.  *Background*

The Postal Service has employed plaintiff since 1979 (Stipulated Fact [SF] 2). At the time of the events giving rise to this case, plaintiff was employed as a mail processing clerk at the Greater Michigan District's P-1 Annex in Kentwood, Michigan (SF 1). The parties do not dispute that plaintiff suffers from Ménière's disease, an episodic inner ear disease characterized by fluctuating hearing loss, fluctuating ringing in the ear, and a fluctuating sensation of spinning or movement (SF 28, 31; JE 84). Nor do the parties dispute that plaintiff can perform the essential functions of his position without accommodation (SF 32).

Plaintiff's condition of Ménière's disease was documented in 1994 in his confidential medical file maintained by the Postal Service's medical unit in Grand Rapids, Michigan (Joint Exhibit [JE] 2). Only the Postal Service medical unit staff has access to the file. The medical unit staff includes one contract physician, Dr. Pamela Zuidgeest, M.D.; a registered nurse and administrator, Suzanne Surrell; and two contract nurses, Jill Fatum and Marcia Plaggemars. It was established at trial that the medical unit does not permit the Postal Service's FMLA coordinators to review the medical files maintained in the medical unit.

Dr. Zuidgeest testified that she is solely responsible, with the assistance of the nursing staff, for the medical unit within the Greater Michigan District. The Greater Michigan District encompasses approximately 10,000 employees. Dr. Zuidgeest testified that at any given time, she has approximately 15 to 20 active files that require her attention.

It was established at trial that the medical unit does not determine whether to approve or deny employee requests for FMLA-protected leave time. Rather, the District's FMLA coordinators

– Deborah Anne Treamer, Douglas Warner, Scott Maichele, and Anna Armstrong – are solely responsible for making the decisions to approve or deny FMLA requests. The FMLA coordinators consult the medical unit for assistance only in those circumstances where there are questions regarding the medical information an employee has submitted.

On October 27, 2006, plaintiff submitted a certification form to defendant's FMLA office, requesting FMLA certification for any possible future absences due to "chronic dizziness" (JE 6). That same day, FMLA Coordinator Treamer informed plaintiff that his request was "premature" as he had not yet incurred an absence related to his medical condition (JE 7). Further, Treamer advised plaintiff that even if his certification was submitted in conjunction with a related absence that his certification was incomplete inasmuch as he had not indicated how he was incapacitated by the dizziness condition, the commencement date of the condition, the expected duration of the condition, or the expected frequency of his future incapacity and treatment (*id.*).

Plaintiff re-submitted the certification October 30, 2006, and Treamer rejected it on November 1, 2006 (JE 8-9). Treamer advised plaintiff to consult her October 27, 2007 correspondence "regarding what is needed for a complete certification" (JE 9).

On November 3, 2006, plaintiff wrote Treamer, advising her of his belief that her understanding of the FMLA and implementing regulations was flawed and incorrect (JE 10). FMLA Coordinator Warner responded in writing November 7, 2007, reiterating Treamer's position (JE 12).

Plaintiff was absent from work November 6 to November 9, 2006. On November 20, 2006, plaintiff resubmitted his FMLA certification form but did not specifically address the deficiencies Treamer had identified (JE 13). A note from plaintiff's personal physician, Eric C. Weinman, M.D.,

dated November 13, 2006 ambiguously attributed plaintiff's November 6 to 9, 2006 absence to "a chronic health condition (condition listed on FMLA paper)" (*id.*).

On November 23, 2006, Treamer advised plaintiff that his medical certification form was incomplete and again delineated the additional information that he was required to submit within 15 days (JE 14). Also on November 23, 2006, Treamer forwarded plaintiff's FMLA certification form to the medical unit for Dr. Zuidgeest's review (JE 15). Treamer indicated that plaintiff's dizziness condition "could raise a safety concern" (*id.*).

Plaintiff subsequently responded to Treamer in writing (the letter is not dated), again opining that Treamer's understanding of the FMLA was incomplete (JE 16). Treamer responded on December 5, 2006, reiterating that the medical certification plantiff submitted to cover his November 6 to 9, 2006 absence was still incomplete and that the due date for completion was approaching (JE 17).

On December 7, 2006, Dr. Zuidgeest determined that plaintiff needed to be cleared by the medical unit before returning to work from another absence due to his dizziness condition (JE 15). Dr. Zuidgeest based her decision on her review of plaintiff's medical unit file; his FMLA certification form; an internal return-to-work regulation of the Postal Service, ELM § 865.1; her knowledge of and research about Ménière's disease; and the job description for the mail processing clerk position, which includes working around automated machinery. Dr. Zuidgeest testified that she was concerned that plaintiff could be harmed if he had a dizziness episode while working around the automated machinery. Dr. Zuidgeest testified that it would be "atypical" for her to visit an employee's actual work site to make a medical clearance determination.

ELM § 865.1 sets forth circumstances in which the Postal Service requires a return-to-work clearance after an absence for medical reasons (JE 1). Those circumstances include when there is a reasonable belief that "the employee may not be able to perform the essential functions of his/her position" or that "the employee may pose a direct threat to the health or safety of him/herself or others due to that medical condition" (*id.*).

Plaintiff was informed of the requirement that he be cleared through the medical unit before he could return to work for absences related to his current FMLA case (JE 22, 23).

On December 11, 2006, Warner informed plaintiff that his November 6 to 9, 2006 absence would not be an FMLA-approved absence due to plaintiff's failure to address the certification deficiencies and submit a complete certification (JE 18).

B. *Plaintiff's December 2006 Absence from Work*

Plaintiff was absent from work December 27 and December 28, 2006. When he returned to work on December 29, 2006, he was placed on Absence Without Leave (AWOL) status (SF 6-7, 9). He was told to go home because he had not first been cleared through the medical unit.

On December 30, 2006, FMLA Coordinator Armstrong informed plaintiff that his December 27 to 29, 2006 absence was not an FMLA-protected leave because he had failed to provide a complete medical certification (JE 24; SF 8).

On January 9, 2007, the Postal Service sent plaintiff a "Letter of Intent," informing him that he needed to substantiate his absence with "proper medical certification" from his physician (JE 25). He was further informed that if he failed to provide an acceptable medical certification within the time limitations provided, disciplinary action would be taken (*id.*). Plaintiff's AWOL status continued through January 10, 2007 (SF 9).

On January 11, 2007, plaintiff provided the Postal Service with a January 4, 2007 note from Dr. Weinman indicating that plaintiff was "unable to report to work December 27-28 2006 due to his FMLA condition" but that he is "able to perform his work ... without being a hazard to himself or others" (JE 26). The Postal Service authorized plaintiff's return to work on January 11, 2007 (SF 11).

On November 9, 2007, pursuant to a grievance settlement, the Postal Service and the American Postal Workers Union agreed that plaintiff would not be issued any corrective action for his December 27 and 28, 2006 absence (JE 68). Further, it was agreed that the 48 hours of AWOL that plaintiff was charged from January 3 to January 10, 2007 would be changed to sick leave (JE 69; SF 34). Plaintiff did not concur in this use of his sick leave (SF 34). On December 28, 2007, plaintiff received a lump sum payment in the amount of $1,197.00 for the work that he missed from December 29, 2006 through January 10, 2007 (JE 69; SF 43-44).

As FMLA damages from the time period December 29, 2006 through January 10, 2007, plaintiff requested at trial the restoration of 55.68 hours of sick leave; interest on the $1,197.00 paid during the grievance settlement; and liquidated damages of $1,197.00 plus interest. Plaintiff also requested actual damages to compensate him for the finance charges on certain credit card statements totaling $40.59 (JE 88); a co-payment of $13.28 for a physician's visit (JE 92); and co-payments of $6.63, $6.63, $6.63, and $6.45 for prescriptions (JE 87, 91).

C.  *Plaintiff's June 2007 Absence from Work*

On April 13, 2007, plaintiff submitted another unsolicited FMLA certification form for "chronic dizziness" (JE 27). He had not incurred any FMLA-related absence during the calendar

6

year 2007. Like his October 2006 submission, the FMLA office rejected this certification as "premature" (JE 28).

On April 17, 2007, plaintiff called in sick (JE 30; SF 12). As a result, the Postal Service's call-in center in Topeka, Kansas sent him an FMLA packet (JE 29; SF 13). On April 26, 2007, plaintiff submitted an FMLA certification form (JE 33).

On May 3, 2007, FMLA Coordinator Warner informed plaintiff that his most recent FMLA certification form was incomplete (JE 38). Warner provided plaintiff with a medical release form for his signature and offered to have Dr. Zuidgeest directly contact plaintiff's personal physician in order to obtain clarification of the missing and illegible information (*id.*).

However, plaintiff refused to sign the medical release authorization form and instead indicated in a May 7, 2007 fax to the FMLA office that Dr. Zuidgeest was "not authorized" to speak with his personal physician, that the FMLA office was "not authorized to release [his] medical information to my supervisors or managers," and that the medical unit was "prohibit[ed] ... from disclosing the underlying condition that causes my symptoms of dizziness with you or any one [in] your Office as such disclosure is not required to request coverage under the FMLA or necessary for you to review my FMLA certification requests" (JE 39). Plaintiff indicated that the Postal Service's position regarding his FMLA status was "untenable" and that he would provide the Postal Service with "one last opportunity" to approve his requests for FMLA leave before filing suit in federal court (*id.*).

Also on May 7, 2007, plaintiff faxed the medical unit a May 3, 2007 "Declaration of Eric C. Weinman, M.D." (JE 36; SF 14). In the declaration, Dr. Weinman opined that because plaintiff's "Ménière's disease and the primary symptom of intermittent chronic dizziness does not pose a risk

7

to himself or others as he does not operate machinery, operate a vehicle, and is currently not working around automated equipment in his present position," the Postal Service had erred in requiring plaintiff to have medical clearance before returning to work (JE 36). Plaintiff did not also send the declaration to the FMLA office.

Dr. Zuidgeest testified that after receiving the declaration, she contacted plaintiff's supervisor via e-mail and attempted to verify Dr. Weinman's representation that plaintiff did not work around automated machinery. Dr. Zuidgeest testified that she understood Dr. Weinman's declaration as a document relating to the medical clearance requirement she had imposed, not a document for the medical unit to use to assist the FMLA coordinators in evaluating plaintiff's FMLA certification forms. She testified that the FMLA office usually makes a specific request to the medical unit when items in an employee's FMLA certification need clarification.

On May 16, 2007, plaintiff wrote medical unit administrator Surrell, requesting that the "Contract Doctor/Medical Unit reevaluate each of my FMLA related absences for which the FMLA office denied, as well as the continued and repeated mandate that I obtain clearance from your Medical Unit to return from [sic] duty" (JE 40).

Plaintiff was absent from work June 11 to June 13, 2007 (SF 16). When he arrived at work on June 14, 2007, he was sent home because he had not obtained medical clearance to work (SF 17).

On June 19, 2007, the medical unit received a note from Dr. Weinman dated June 15, 2007, which indicated that plaintiff was "unable to work 6-11-07, 6-12-07 & 6-13-07 due to illness. May return to work 6-14-07 [illegible – 6-19-07?]. As per prior declaration does not pose a danger to himself or others" (JE 42). On June 20, 2007, the medical unit e-mailed the secretary to plaintiff's

8

plant manager, advising her that the medical unit had received medical documentation that, although illegible, provided a basis for approving plaintiff's return to work (JE 47).

Testimony at trial indicated that it is not the practice of the mail processing supervisors in Grand Rapids to notify employees either by telephone or in writing of when to return to work; rather, the employee bears the responsibility to contact management. Nonetheless, correspondence from plaintiff to the medical unit reveals that he was waiting for management to contact him with a return-to-work date (JE 44-45, 49). Plaintiff eventually returned to work on June 27, 2007 (SF 20).

On June 28, 2007, Dr. Zuidgeest met with plaintiff at his work station at the P-1 Annex to observe his work site (JE 78-79). She determined that plaintiff's duties were "manual" and did "not pose a hazard to self/other due to his condition" (*id.*). Consequently, Dr. Zuidgeest e-mailed his supervisors to alert them of the fact that "medical clearance is no longer required for absences associated with his FMLA condition" (*id.*).

On July 3, 2007, FMLA Coordinator Warner wrote plaintiff, informing him that another FMLA certification that plaintiff provided on June 21, 2007 required "additional clarification/authentication" regarding plaintiff's medical condition (SF 18; JE 42, 54). Warner provided a medical release form for plaintiff to sign to authorize Dr. Zuidgeest to contact his physician (JE 54).

On July 6, 2007, plaintiff replied to Warner, pointing out that "the USPS has a sworn declaration from Dr. Weinman in my official medical file attesting to my condition" and advising that he would not sign the release until Warner explained "what clarification you need" (JE 55).

On July 10, 2007, Treamer replied to plaintiff, indicating that the FMLA office had not received the declaration referenced by plaintiff "or any information from a doctor" (JE 56). Treamer

9

further informed plaintiff that his request for FMLA-protected leave for his June 11 to June 13, 2007 absence was not approved due to his failure to authorize the medical release or otherwise provide a complete certification (*id.*).

On November 9, 2007, pursuant to a grievance settlement, the Postal Service and the union agreed that the Leave Without Pay (LWOP) charged to plaintiff on June 14 and June 15, 2007 as well as the AWOL for June 18 to June 26, 2007 would be "annotated as work hours" (JE 67). To further resolve the grievance, plaintiff was paid a lump sum of $1,657.99 (*id.*). The Postal Service and the union also agreed that the June 18 to June 26, 2007 absence would not be cited in any attendance-related action (*id.*).

As FMLA damages from the time period June 10, 2007 to June 13, 2007, plaintiff asserted at trial that $117.11 of lost wages remains in dispute. Plaintiff arrived at this amount by subtracting the settlement amount ($1,657.99) from his alleged total lost wages ($1,775.10). Plaintiff also claims liquidated damages of $1,775.10 plus interest and actual damages for the co-payment of $13.53 for a physician's visit (JE 93).

Plaintiff's claimed damages under the Rehabilitation Act include the loss of wages and incidental out-of-pocket expenses claimed under the FMLA as well as compensatory damages. Regarding the latter, plaintiff described at trial his claimed pain and suffering, including stress, humiliation, anxiety, marital strife, strained familial relationships, increased dizziness attacks, and accelerated hearing loss.

D.   *FMLA Approval*

Plaintiff submitted a new FMLA certification form on April 10, 2008, while this case was pending (JE 75). This certification form authorized the FMLA office to view Dr. Weinman's May

3, 2007 declaration, which was still maintained in the medical unit. On April 22, 2008, the FMLA office granted plaintiff's request for FMLA protection and issued him a case number that he could reference for any absences related to his condition (JE 76).

II

A. *Family Medical Leave Act*

The FMLA affords those who cannot work as a result of a "serious health condition" up to twelve weeks of leave in one year. 29 U.S.C. § 2612(a)(1)(D). Under certain circumstances, FMLA leave may be taken "intermittently or on a reduced leave schedule." 29 C.F.R. § 825.203(a).

Section 105 of the FMLA, 29 U.S.C. § 2615, prohibits covered employers such as the Postal Service from interfering with, restraining, or denying the exercise of their employees' rights under the statute and also makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(1), (a)(2), (b). These provisions are enforceable under § 107 of the FMLA, which imposes liability on "[a]ny employer who violates section 2615," and provides an individual right of action to sue in state or federal court. 29 U.S.C. § 2617(a)(1), (a)(2).

The Sixth Circuit recognizes two theories under which an employee may seek recovery under the FMLA: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of Am. Mfg., Inc.,* 384 F.3d 238, 244 (6th Cir. 2004). Plaintiff proffers both theories for his claim under the FMLA.

1. "Interference"

The pertinent question in an FMLA interference claim is whether the employer unlawfully interfered with an employee's rights protected by the FMLA. Plaintiff alleges that the Postal Service interfered with his FMLA rights by rejecting his FMLA paperwork and unlawfully denying him FMLA protection for his absences from work. To prevail on an entitlement claim, a plaintiff must prove that

(1) he was an eligible employee under the FMLA;

(2) the defendant is an employer as defined under the FMLA;

(3) he was entitled to leave under the FMLA;

(4) he gave the employer notice of his intention to take leave; and

(5) the employer denied him FMLA benefits to which he was entitled.

*Edgar v. JAC Products, Inc.,* 443 F.3d 501, 507 (6th Cir. 2006).

In this case, the Court concludes that the Postal Service did not unlawfully deny plaintiff FMLA benefits to which he was entitled. Rather, the Court concludes that plaintiff failed to give the Postal Service complete and sufficient certification of a "serious health condition."

29 U.S.C. § 2613(a) provides that "[a]n employer may require that a request for leave under subparagraph ... (D) of paragraph (1) ... of section 2612(a) [for a "serious health condition"] be supported by a certification issued by the health care provider of the eligible employee ... The employee shall provide, in a timely manner, a copy of such certification to the employer."

An employer is entitled to receive a "complete and sufficient" FMLA certification issued by the health care provider of the eligible employee. 29 C.F.R. § 825.307(a). "It is the employee's

responsibility to provide the employer with a complete and sufficient certification and to clarify the certification if necessary." *Id.*

29 U.S.C. § 2613(b) governs "certification" and provides that certification provided under 29 U.S.C. § 2613(a) shall be "sufficient" if the certification states – "(1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;  ... (4)(B) for purposes of leave under section 2612(a)(1)(D) of this title [for a serious health condition], a statement that the employee is unable to perform the functions of the position of the employee ... [and] (6) in the case of certification for intermittent leave ... under section 2612(a)(1)(D) of this title, a statement of the medical necessity for the intermittent leave or leave on a reduced leave schedule, and the expected duration of the intermittent leave or reduced leave schedule."

"The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient.  A certification is considered incomplete if the employer receives a certification, but one or more of the applicable entries have not been completed. A certification is considered insufficient if the employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive.  The employer must provide the employee with seven calendar days (unless not practicable under the particular circumstances despite the employee's diligent good faith efforts) to cure any such deficiency."  29 C.F.R. § 825.305(c).

The Sixth Circuit has held that an employer is entitled to rely on a "negative certification" – a certification that is incomplete or insufficient – in denying FMLA leave.  *Nawrocki v. United*

*Methodist Retirement Communities,* 174 Fed. Appx. 334, 338 (6th Cir. 2006) (quoting *Stoops v. One Call Communications, Inc.,* 141 F.3d 309, 311 (7th Cir. 1998)). *See also* 29 C.F.R. § 825.305(d).

Here, as described in the testimony and exhibits recounted above, the medical certifications accompanying plaintiff's series of FMLA requests were alternatively premature, incomplete, and/or failed to clearly establish the frequency, imminence and duration of his asserted chronic dizziness condition as required by 29 U.S.C. § 2613(b). The Postal Service's FMLA coordinators gave plaintiff reasonable time to cure the incomplete certifications. Because plaintiff failed to cure these deficiencies, the Postal Service lawfully relied on the "negative certification" of his medical certifications in denying his requests for FMLA leave. For these reasons, the Court concludes that plaintiff fails to satisfy the prima facie elements of an FMLA interference claim.

2. Discrimination

The pertinent issue in an FMLA disparate treatment, or discrimination, claim is whether an employer discriminated against an employee because the employee invoked his FMLA rights. *Edgar,* 443 F.3d at 508. An FMLA retaliation claim based solely upon circumstantial evidence of unlawful conduct is evaluated according to the tripartite burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Daugherty v. Sajar Plastics, Inc.,* 544 F.3d 696, 707 (6th Cir. 2008). A plaintiff must typically make a prima facie showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.*

However, when such an action is based upon direct evidence of discrimination – i.e., "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions" – a plaintiff need not proceed under the *McDonnell*

*Douglas* analysis. *Daugherty, supra.* "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* (quoting *DiCarlo v. Potter,* 358 F.3d 408, 415 (6th Cir. 2004)). "The evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [the FMLA], but also that the employer acted on that predisposition." *Id.*

Plaintiff's discrimination claim rests on his assertion that his FMLA requests triggered the Postal Service to impose the requirement that he obtain medical unit clearance before returning to work after another absence related to his chronic dizziness. Plaintiff argues that this case is therefore a "direct evidence" case because the Postal Service would not have required him to obtain medical clearance absent the exercise of his FMLA rights.

The Court disagrees. The imposition of the return-to-work clearance after plaintiff requested FMLA protection for his medical-related absence is not evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the Postal Service's decision. The evidence instead requires the inference that the Postal Service retaliated against plaintiff in imposing the return-to-work clearance requirement.

Reviewing the circumstantial evidence in this case, the Court determines that plaintiff has not demonstrated a causal connection between the exercise of his FMLA rights and the claimed adverse employment action. The testimony from the FMLA coordinators at trial revealed no evidence of intentional discrimination or bad faith in the processing of plaintiff's FMLA protected leave requests. Plaintiff was subject to the same policies and procedures as any similarly situated Postal Service employee who submitted incomplete or insufficient certification. Indeed, the

15

insufficient or incomplete nature of plaintiff's requests for FMLA protection for his medical-related absences was the catalyst that led to the medical unit imposing the return-to-work clearance requirement until plaintiff provided more information about his disability. For these reasons, the Court concludes that plaintiff fails to satisfy the prima facie elements of an FMLA discrimination claim.

B. *Rehabilitation Act*

Plaintiff also claims, under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, that he was disparately treated with respect to his return to work by having to be cleared through the medical unit. The Rehabilitation Act, not the Americans with Disabilities Act (ADA), constitutes the exclusive remedy for a federal employee alleging disability-based discrimination. *See* 42 U.S.C. § 12111(5)(B)(i) (defining employers covered by the ADA but excluding the United States or a corporation wholly owned by the U.S. government); *Peltier v. United States,* 388 F.3d 984, 989 (6th Cir. 2004) ("[T]he Rehabilitation Act ... provides the remedy for federal employees alleging disability discrimination."). However, to recover on a claim of discrimination under the Rehabilitation Act, the Sixth Circuit utilizes the same substantive standard as for claims under the ADA. *Jones v. Potter,* 488 F.3d 397, 404 (6th Cir. 2007).

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794(a).

To recover under the Rehabilitation Act, plaintiff must show the following:

(1) he is an individual with a disability;

16

(2)     he is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and

(3)     he was discharged solely because of his disability.

*See Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1178 (6th Cir. 1996).

Only the third element is at issue here. Because plaintiff was not terminated from his employment, he must establish that he suffered an "adverse employment action." *See Plautz v. Potter,* 156 Fed. Appx. 812, 817 (6th Cir. 2005). "An adverse employment action is a 'materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.'" *Id.* (quoting *Mitchell v. Vanderbilt Univ.,* 389 F.3d 177, 182 (6th Cir. 2004)). Tangible employment actions of an employer that constitute a significant change in employment status include "hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)). In the context of the Rehabilitation Act, which is a single-motivation statute, an employee must prove he suffered the alleged adverse employment action solely by reason of his disability. *Jones,* 488 F.3d at 409.

The material change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Stone v. Bd. of Dirs. of Tennessee Valley Auth.,* 35 Fed. Appx. 193, 199 (6th Cir. 2002) (quoting *Hollins v. Alt. Co.,* 188 F.3d 652, 662 (6th Cir. 1999)). The material change "may be indicated by termination, demotion through a decrease in wage or salary, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* "A 'de minimis employment [action]' does not constitute a materially adverse employment action." *Id.* (quoting *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 462 (6th

Cir. 2000)). "Not everything that makes an employee unhappy is an adverse employment action." *Id.* at 200.

Plaintiff's Rehabilitation Act claim fails because he did not suffer an adverse employment action solely because of his disability. Plaintiff points to the periods of what he characterizes as "forced leave" during December 2006 and June 2007 as adverse employment actions taken by the Postal Service "solely as a result of the intermittent chronic dizziness caused by Ménière's disease." Plaintiff points out that he lost wages and sick leave time (even if later reinstated through the grievance processes) as a result of being sent home those two times.

Even assuming arguendo that plaintiff has identified an adverse employment action in this case, his Rehabilitation Act claim fails because he did not demonstrate that his disability caused the imposition of the medical clearance requirement and its attendant consequences. Nothing at trial supported the inference that the Postal Service imposed the medical clearance requirement because of disability discrimination. Rather, the testimony and evidence supported the conclusion that the medical clearance requirement was imposed because of plaintiff's failure to timely supply sufficient information about his disability, information that would have answered the questions raised by his absences from work and subsequent requests for FMLA protection.

The record demonstrates that the Postal Service's contract physician, Dr. Zuidgeest, was limited by the scant information plaintiff provided about his dizziness condition. For example, Dr. Zuidgeest had no information about the point to which plaintiff's condition had progressed, his treatment (if any), or even whether he was under the care of a physician. The Court therefore finds that Dr. Zuidgeest made a good faith determination in December 2006 that, upon plaintiff's return to work from another absence due to his dizziness condition, he would need to be cleared by the

medical unit. The Postal Service's established policy, the return-to-work regulation found at ELM § 865.1, made it permissible for her to require clearance in these circumstances, and plaintiff was informed of the requirement in the event he was required to take another absence related to his condition. When plaintiff provided the medical unit with a declaration from his physician nearly six months later, in May 2007, Dr. Zuidgeest visited plaintiff's work site and obtained sufficient information to support her decision to lift the medical clearance requirement the following month.

Because plaintiff has not shown the third element of his prima facie case, that he suffered an adverse employment action "because of his disability," no liability under the Rehabilitation Act lies against defendants. Indeed, the record, as a whole, demonstrates not discrimination by the Postal Service but its efforts to accommodate plaintiff's disability.

### III

Defendants are entitled to Judgment in their favor on plaintiff's FMLA claim and his Rehabilitation Act claim. A Judgment consistent with this Opinion will be entered.


DATED: February 5, 2009      /s/ Janet T. Neff
                             JANET T. NEFF
                             United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID VERKADE,

       Plaintiff,                                Case No. 1:07-cv-531

v.                                                 HON. JANET T. NEFF

UNITED STATES POSTAL SERVICE
and POSTMASTER GENERAL JOHN E.
POTTER,

       Defendants.
_____/

## JUDGMENT

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that Judgment is entered in favor of Defendants United States Postal Service and Postmaster General John E. Potter and against Plaintiff David Verkade.

DATED: February 5, 2009                    /s/ Janet T. Neff
                                                 JANET T. NEFF
                                                 United States District Judge